IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                                   :
ROBERT MITCHELL,                   :       HON. JEROME B. SIMANDLE
                                   :
              Plaintiff,           :       Civil No. 11-1664 (JBS/JS)
                                   :
     v.                            :
                                   :            OPINION
TOWNSHIP OF WILLINGBORO            :
MUNICIPALITY GOVERNMENT, et        :
al.,                               :
                                   :
              Defendants.          :
                                   :
```

APPEARANCES:

Robert Mitchell, pro se
1512 S. 58th Street
Apt. 2
Philadelphia, PA 19143

Dean R. Wittman, Esq.
Matthew B. Wieliczko, Esq.
ZELLER & WIELICZKO
120 Haddontowne Court
cherry Hill, NJ 08034

**SIMANDLE**, Chief Judge:

## I.   INTRODUCTION

This matter is before the Court on Defendant Jeffrey Perez's motion to dismiss [Docket Item 34], Plaintiff Robert Mitchell's motion for summary judgment [Docket Item 37] and Defendant Jeffrey Perez's cross motion for summary judgment [Docket Item 40].  The instant action arises out of a traffic stop on July 3, 2010 when Defendant Officer Jeffrey Perez ("Defendant") stopped Plaintiff Robert Mitchell ("Plaintiff")

after receiving a 9-1-1 dispatch with a description of a suspicious vehicle.  Plaintiff is an African American and alleges the 9-1-1 dispatch did not create the requisite reasonable suspicion to stop his car because his vehicle did not match the given description.  Consequently, Plaintiff brought the instant action against Defendant Perez alleging his Fourth Amendment rights were violated.

For the reasons discussed below, the court will deny all pending motions as genuine issues of material fact exist which prevent summary judgment.  In addition, the court will sua sponte appoint pro bono counsel for the Plaintiff pursuant to 28 U.S.C. § 1915(e).

**II.   BACKGROUND**

The factual background of this case is set forth in the court's opinion of July 26, 2011 and is incorporated herein. [Docket Item 5]; Mitchell v. Township of Willingboro Municipality Government, Civ. No. 11-1664, 2011 WL 3203677 (D.N.J. July 26, 2011).

Plaintiff filed this action based on a police stop of his vehicle that resulted in his arrest because of outstanding warrants against him.  Plaintiff claims that the officer stopping his vehicle lacked reasonable suspicion for the stop, and that he was stopped because of racial profiling, describing himself as a "Black Afro-American Male Citizen."  Compl. 6B.

Specifically, Plaintiff alleges that on July 3, 2010 he was driving in the Township of Willingboro with his son and son's girlfriend.  Id. at 6C.  They were in a green 1993 Honda Accord owned by Plaintiff's wife.  Id.  Plaintiff alleges that he did not speed or otherwise break any traffic laws.  Id. at 6D, 6E. Plaintiff alleges that the officer who stopped him explained that he received a 9-1-1 dispatch call regarding a four-door, blue Honda Accord with no rear license plate and, therefore, stopped Plaintiff's car.[1]  Id. at 6G.  Plaintiff notes that his two-door Honda Accord is green and had a State of Pennsylvania rear license plate.  Id.

Plaintiff did not have his driver's license with him, and when the officer performed a warrant check, central dispatch reported that outstanding warrants existed on Plaintiff's record. Id. at 6H.  Plaintiff was arrested and brought to the Willingboro Township Police Department for booking.  Id. at 6I.  Plaintiff was issued a ticket for operating a motor vehicle on an expired driver's license.  Id.  Plaintiff claims the officer falsified the summons to show the car as being blue instead of green.  Id.

Plaintiff filed the instant action in forma pauperis pursuant to 28 U.S.C. § 1915, attempting to assert claims for

---

[1] Although Officer Perez allegedly told Mitchell that the 9-1-1 caller had identified a blue Honda Accord as the speeding vehicle with no plates, in fact the dispatch tape, as discussed below, demonstrates that the dispatcher told Officer Perez that a dark blue Acura with no license plates was speeding.

deprivation of constitutional rights under 42 U.S.C. § 1983
against the following Defendants in both their individual and
official capacities: the Township of Willingboro, the Township of
Willingboro Police Department, the Township Manager, the Township
Director of Public Safety, the Township Police Captain, and the
Township Police Officer involved in the stop (who was unnamed in
the caption but identified in the Complaint as Officer Jeffrey
Perez).

Since Plaintiff brought the instant action in forma pauperis
pursuant to 28 U.S.C. § 1915, the court engaged in a sua sponte
screening, as required by 28 U.S.C. § 1915(e).  In conducting the
sua sponte screening, the court noted that "[t]he legal standard
for dismissing a complaint for failure to state a claim pursuant
to § 1915(e)(2)(B) is identical to the legal standard used when
ruling on Fed. R. Civ. P. 12(b)(6) motions."  Mitchell, 2011 WL
3203677 at *2 (citing Courteau v. United States, 287 F. App'x
159, 162 (3d Cir. 2008)).

Applying this standard, the court dismissed the majority of
Plaintiff's complaint.  Specifically, the court dismissed the
claims against the Township of Willingboro, the Township of
Willingboro Police Department, the Township Manager, Joanne
Jennings, the Township Director of Public Safety, Gregory Rucker,
and the Township Police Captain, Donna C. Demetri for failure to
state a claim.  The court also dismissed the First Amendment and

4

Fourteenth Amendment claims against Officer Perez for failure to state a claim.

However, the court preliminarily concluded the Complaint asserted a viable Fourth Amendment claim against Officer Perez. The court found the Plaintiff had sufficiently pled that Officer Perez had neither probable cause to believe a traffic violation had occurred nor reasonable suspicion that Plaintiff was engaged in criminal activity when he pulled over Plaintiff's vehicle, making the stop unreasonable under the Fourth Amendment.  In particular, the Complaint alleged the officer's explanation for the stop, that he had received a 9-1-1 dispatch call regarding a four-door, blue Honda Accord, was pretextual.  (Compl. 6J.)  The Complaint further alleged that Plaintiff's vehicle was a green, two-door Honda Accord with Pennsylvania license plates and did not match the description of the blue, four-door Honda Accord with no rear license plate apparently provided by the call.  Id. at 6G.

Therefore, the Court found the Plaintiff sufficiently pled that Officer Perez had neither probable cause to believe a traffic violation had occurred nor reasonable suspicion that Plaintiff was engaged in criminal activity.  Mitchell, 2011 WL 3203677 at **4-5.  Consequently, Plaintiff was permitted to proceed with his Fourth Amendment claim against Defendant Perez.

After filing an answer to the Complaint, Defendant Perez

5

then filed the instant motion to dismiss.[2]  [Docket Item 34.]

Defendant Perez argues Plaintiff's complaint fails to state a

Fourth Amendment claim against him and argues that he is entitled

to qualified immunity.

The Plaintiff did not respond to Defendant Perez's motion to

dismiss.  Instead, the Plaintiff filed an independent motion for

summary judgment.  [Docket Item 37.]  Plaintiff argues he is

entitled to summary judgment because Defendant Perez has failed

to respond to his discovery requests.  Specifically, Plaintiff

maintains Defendant Perez failed to answer his interrogatories

and failed to respond to his document requests.

Defendant Perez then filed a cross motion for summary

judgment.  [Docket Item 40.]  Defendant Perez attaches as an

exhibit his answers to Plaintiff's interrogatories.  Defendant

Perez does not address whether he responded to Plaintiff's

document requests.  In his cross motion for summary judgment,

Defendant Perez reiterates his qualified immunity argument and

does not respond to Plaintiff's arguments regarding discovery

violations.  In support of his cross motion, Defendant Perez

relies on the transcript of the 9-1-1 dispatch call and internal

affairs investigation report which exonerated Defendant Perez of

---

[2] This motion was filed in response to Plaintiff's earlier
motion not to dismiss his complaint. [Docket Item 30.]  The court
summarily denied this motion as there is no basis in the Federal
Rules of Civil Procedure for the filing of a motion *not* to
dismiss a complaint. [Docket Item 42.]

any misconduct associated with the police stop.  The investigation report concluded that Defendant Perez lawfully stopped Plaintiff's vehicle because though it "wasn't an exact match" it was "very similar" to the vehicle described by dispatch.  (Def.'s Ex. D.)  The Plaintiff did not file a reply to Defendant's cross motion.

The court will address each motion separately below.

## III. DEFENDANT'S MOTION TO DISMISS

### A. Standard

In order to give defendant fair notice, and to permit early dismissal if the complained-of conduct does not provide adequate grounds for the cause of action alleged, a complaint must allege, in more than legal boilerplate, those facts about the conduct of each defendant giving rise to liability. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a) and 11(b)(3).  These factual allegations must present a plausible basis for relief (i.e., something more than the mere possibility of legal misconduct). See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009).  In its review of a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

**B. Discussion**

The court previously held in its July 26, 2011 Opinion that Plaintiff's complaint sufficiently stated a claim against Defendant Perez for violating his Fourth Amendment rights. [Docket Item 5.]  In screening the complaint pursuant to 28 U.S.C. § 1915(e), the court applied the identical legal standard used when ruling on Rule 12(b)(6) motions to dismiss.  Defendant Perez has offered no argument to suggest the court erred in its previous analysis preliminarily upholding Plaintiff's Fourth Amendment claim.

However, Defendant Perez argues that he is entitled to qualified immunity and therefore the complaint should be dismissed.  This argument is unpersuasive.

As an "accommodation of competing values," qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where a governmental defendant was "plainly incompetent or . . . knowingly violate[d] the law," while immunizing a state officer who "made a reasonable mistake about the legal constraints on his actions."  Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) (internal quotations and citations omitted).

The Court's assessment of whether a defendant is entitled to qualified immunity hinges on two considerations.  The Court must determine "whether the plaintiff has alleged a deprivation of a

constitutional right at all." Id. (citation omitted). If the
Plaintiff has sufficiently alleged such a deprivation, the Court
must address "whether the right that was [allegedly] violated was
clearly established, or, in other words, whether it would be
clear to a reasonable officer that his conduct was unlawful in
the situation he confronted." Id. (internal quotations and
citations omitted).

The Third Circuit has cautioned against dismissing a case
based on qualified immunity on a Rule 12(b)(6) motion because "it
is generally unwise to venture into a qualified immunity analysis
at the pleading stage as it is necessary to develop the factual
record in the vast majority of cases." Newland v. Reehorst, 328
Fed. Appx. 788, 791 n.3 (3d Cir. 2009). While the issue of
whether a right is clearly established and whether a reasonable
officer could have believed his actions were lawful are questions
of law for the court to decide, the Court does not consider facts
outside the pleadings in assessing these issues. The Third
Circuit has clearly held that "qualified immunity will be upheld
on a 12(b)(6) motion only when the immunity is established on the
face of the complaint." Thomas v. Independence Township, 463
F.3d 285, 291 (3d Cir. 2006).

In this case, the court confirms its previous holding that
the Plaintiff has sufficiently pled a violation of his Fourth
Amendment rights by Defendant Perez. [Docket Item 5.]

Plaintiff's complaint alleges that Officer Perez received a 9-1-1 dispatch call to pull over a blue Honda Accord with no license plates that had been speeding down a nearby road.  Plaintiff alleges his car was a green Honda Accord with a Pennsylvania license plate and that he was not committing any traffic violations at the time he was pulled over by Officer Perez. Plaintiff further argues his Honda Accord had a rear Pennsylvania license plate and that Pennsylvania does not require a license plate on the front of the car.  Plaintiff maintains Defendant Perez used the 9-1-1 dispatch call as a pretext to make the stop and Plaintiff avers the only reason he was pulled over was because he is an African American male.  This sufficiently alleges a deprivation of a constitutional right and plausibly states a claim under the Fourth Amendment.

With regard to the second prong of the qualified immunity analysis, it is well established that an officer must have an articulable and reasonable suspicion that the driver has committed a motor vehicle offense in order to conduct an investigatory stop.  Delaware v. Prouse, 440 U.S. 648, 699 (1979).  Defendant Perez does not argue that Plaintiff's Fourth Amendment rights in this case were not clearly established. Consequently, the Plaintiff's complaint satisfies the second prong of the qualified immunity analysis.

Therefore, the court concludes it is inappropriate to

10

dismiss this case on qualified immunity grounds at the pleading stage.  Here, the immunity is not established on the face of the complaint.  The Plaintiff adequately alleges a violation of his Fourth Amendment rights and these rights were clearly established at the time of the incident.

Accordingly, Defendant Perez's motion to dismiss will be denied.

## IV.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The Plaintiff argues summary judgment is appropriate against Officer Perez because the Defendant has failed to respond to Plaintiff's discovery requests.  Specifically, Plaintiff maintains the Defendant has not filed answers to his interrogatories and has not responded to his document requests. Plaintiff argues the Defendant was required to respond to his discovery requests by April 30, 2012 pursuant to the court's scheduling order.  [Docket Item 27.]  By failing to comply with the discovery schedule, Plaintiff contends summary judgment is appropriate.

In response to Plaintiff's motion, Defendant attached his answers to Plaintiff's interrogatories.  The Defendant did not address whether he also complied with Plaintiff's requests for production of documents.

Plaintiff's motion for summary judgment is more akin to a motion seeking sanctions for discovery violations pursuant to

11

Fed. R. Civ. P. 37.  This rule allows a party to seek a default judgment when a defendant "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35 or 37(a)."  Fed. R. Civ. P. 37(b).  The imposition of a default judgment for a discovery violation is an extreme sanction and is only permitted in the most egregious cases.  National Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 390 (1976); Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984).

Before imposing a sanction, such as default, which prejudicially disposes of the issues in a case, a district court must consider the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.  Poulis, 747 F.2d at 868.

Here, the Plaintiff has failed to establish many of the necessary factors to warrant the extreme sanction of a default judgment.  The Plaintiff filed the instant motion of May 1, 2012, one day after the discovery deadline had passed.  The Plaintiff

has not alleged that he reached out to counsel to determine what caused the delay in responding to his interrogatories or document requests or whether a simple extension of time could have cured the issue.  There is no evidence of prejudice in this case as the discovery deadline of July 13, 2012 has only recently passed.  It is feasible to reopen discovery to cure any delinquent or insufficient responses of Defendant Perez without causing prejudice to the Plaintiff.  There is no history of dilatoriness in the record and there is no evidence that Defendant Perez acted willfully or in bad faith in failing to respond promptly to Plaintiff's discovery requests.  It is clear to the court that alternative sanctions, such as an order compelling Defendant Perez to comply with discovery requests, are more appropriate than the extreme sanction of default.

Further, Defendant Perez attached his interrogatory answers to his cross motion for summary judgment.  Consequently, this discovery violation has already been cured.  It is unclear to the court whether Defendant Perez also belatedly complied with Plaintiff's document requests.  However, if this remains an issue, the Plaintiff can file a motion to compel and this alternative sanction is more appropriate than the extreme sanction of default.

Therefore, Plaintiff's motion for summary judgment, which in effect seeks a default judgment because of Defendant Perez's

delayed discovery responses, will be denied.  This denial is without prejudice to Plaintiff filing a motion to compel discovery to obtain Defendant Perez's response to Plaintiff's request for production of documents, if necessary.

**V.  DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

In response to Plaintiff's motion for summary judgment, Defendant Perez filed a cross motion for summary judgment seeking dismissal of Plaintiff's complaint.  Defendant Perez again raises the defense of qualified immunity.  In support of his motion, Defendant Perez relies on the transcript of the 9-1-1 dispatch call and the internal investigative report which exonerated Defendant Perez of any alleged misconduct.

According to the 9-1-1 dispatch transcript, on July 3, 2010 at approximately 7:32PM, a resident on Hampton Lane in Willingboro made a 911 call and reported that a dark blue Acura with no license plates had been speeding up and down Hampton Lane.  (Def.'s Ex. B, 9-1-1 Dispatch Transcript.)  The resident complained, "He's up and down the road.  He just did it again. . . He don't have any license plates."  (Def.'s Ex. B at 3:6-12.) Officer Perez then received a call from dispatch which relayed the information received from the 9-1-1 call.  Specifically, dispatch told the Defendant that "a dark blue Acura with no plates" was driving up and down Hampton lane at a high rate of speed.  (Def.'s Ex. B at 3:16-18.)

14

"Seconds later," Defendant Perez observed a "teal Honda Accord" with no front license plate, which passed him on Harrington Lane.  (Statement of Facts ¶9; Def.'s Ex. A, Defendant Perez's Answers to Interrogatories, ¶2; Def.'s Ex. B at 4:7-8.) Defendant Perez reported to dispatch that there were "three or four occupants" in the car and that the vehicle had a Pennsylvania license plate.  (Def.'s Ex. B at 4:18-20.) Defendant Perez noted the vehicle "looks like a blue Honda Accord."  (Def.'s Ex. B at 19-20.)  Defendant Perez then initiated an investigatory stop of the Plaintiff's vehicle.

After stopping Plaintiff's vehicle, Officer Perez asked for a license, registration and insurance documents from the Plaintiff.  The Plaintiff did not have his driver's license on him and instead provided the Defendant with his full name, date of birth and social security number.  The Defendant permitted Plaintiff's son and girlfriend to exit the car because Plaintiff's son was having medical problems.  Defendant Perez then ran everyone's identification.  Plaintiff's son and girlfriend had no outstanding warrants and were permitted to leave the stop.  Plaintiff, however, had two outstanding warrants and had a suspended Pennsylvania driver's license.  Consequently, Plaintiff was taken into custody.[3]  (Def.'s Ex. D, Investigation

---

[3] This information is taken from the internal investigation report of the incident and describes what was reviewed from the in-car camera video from Defendant Perez's marked patrol vehicle.

Report, at 3-4.)

Defendant Perez argues these facts are sufficient to support a qualified immunity defense.  Specifically, Defendant argues that he had an articulable and reasonable suspicion to warrant the investigatory stop.  Defendant Perez argues Plaintiff's allegations that his vehicle was stopped solely because of his race have no basis in the record.  Defendant Perez emphasizes that the transcript of the dispatch call reveal no use of racial epithets and there is no allegation that the Defendant was demeaning to the Plaintiff during the stop.  Defendant Perez argues he was completely justified in stopping Plaintiff's vehicle based upon the dispatch call he received.  The Defendant further argues that the temporary detention of the Plaintiff to verify his driving credentials and check for outstanding warrants was justified under the circumstances.

**A. Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a

---

This video was not provided to the court for review and is not part of the record.  Since the Plaintiff has not challenged the admissibility of the investigation report, and has not denied these facts as alleged in Defendant Perez's Rule 56.1 statement of material facts not in dispute, these facts will be deemed admitted for the purposes of this motion.

reasonable jury could return a verdict for the non-moving party."
See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A
fact is "material" only if it might affect the outcome of the
suit under the applicable rule of law.  Id.  Disputes over
irrelevant or unnecessary facts will not preclude a grant of
summary judgment.  Id.  The Court will view any evidence in favor
of the nonmoving party and extend any reasonable favorable
inferences to be drawn from that evidence to that party.  Hunt v.
Cromartie, 526 U.S. 541, 552 (1999).  See also Scott v. Harris,
550 U.S. 372, 378 (2007) (The district court must "view the facts
and draw reasonable inferences in the light most favorable to the
party opposing the summary judgment motion.").

**B. Discussion**

As discussed above, qualified immunity strikes a balance by
permitting a plaintiff to recover for constitutional violations
where a governmental defendant was "plainly incompetent or . . .
knowingly violate[d] the law," while immunizing a state officer
who "made a reasonable mistake about the legal constraints on his
actions."  Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007)
(internal quotations and citations omitted).

As discussed above in Part III.B, a defendant's entitlement
to qualified immunity hinges on two considerations.[4]  First, a

_____

[4] While under Saucier v. Katz, 533 U.S. 194 (2001),
overruled in part by Pearson, 129 S.Ct. at 818, the qualified
immunity standard followed a "rigid order of battle," Pearson,

court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all," Pearson v. Callahan, 555 U.S. 223, 232 (2009)(citation omitted), which, as the Court of Appeals has emphasized, is not a question of immunity as such, "but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity." Curley, 499 F.3d at 207.  A court must then decide "whether the right that was violated was clearly established, or, in other words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (internal quotations and citations omitted).  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (citation omitted).

As discussed supra in Subsection III.B, the Plaintiff has clearly alleged a deprivation of his Fourth Amendment rights. The remaining issue before the court and argued by Defendant Perez in his summary judgment motion is whether the right at

---

129 S.Ct. at 817 (citation omitted), in which the question of whether a right was clearly established was assessed only if the plaintiff had adequately alleged a violation in the first place, the Supreme Court adopted a more flexible approach in Pearson. As the Court explained, "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking will best facilitate the fair and efficient disposition of each case." Pearson, 129 S.Ct. at 821.

issue was clearly established.

A right is clearly established when "it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Lamont v. New Jersey, 637 F.3d 177, 182 (3d Cir. 2011).  At the time of this incident, it was clearly established that a police officer must have an articulable and reasonable suspicion that a driver has committed a motor vehicle offense in order to conduct an investigatory stop.  Delaware v. Prouse, 440 U.S. 648, 699 (1979).  These stops are "more analogous to a so-called 'Terry Stop,' see Terry v. Ohio, 392 U.S. 1 (1968), than to a formal arrest." Berkemer v. McCarty, 468 U.S. 420, 439 (1984).  The determination of whether a police officer had reasonable and articulable suspicion to make an investigatory stop depends on the "totality of the circumstances." United States v. Arvizu, 534 U.S. 266, 273 (2002).  "The inquiry into the existence of reasonable suspicion is fact-specific." Karnes v. Skrutski, 62 F.3d 485, 493 n.5 (3d Cir. 1995)(citing Terry v. Ohio, 392 U.S. 1, 15 (1968)).

Therefore, since the law was clear at the time of the incident that reasonable suspicion was required to conduct an investigatory stop, Defendant Perez can be granted qualified immunity only if his conduct in stopping Plaintiff's car was a violation a reasonable officer could have committed.  Viewing the facts in the light most favorable to Plaintiff as the non-moving

19

party, the court concludes a reasonable officer would not have conducted an investigatory stop of the Plaintiff in this situation and a jury could conclude reasonable suspicion did not exist.

In looking at the factual record in the aggregate, there are several inconsistencies between the suspicious vehicle reported to dispatch and the Plaintiff's car such that a reasonable officer could conclude that reasonable suspicion did not exist to conduct an investigatory stop. First, the record establishes that, in communicating to Officer Perez before any vehicle was pulled over, dispatch described the offending vehicle as a dark blue Acura with no license plates which was driving up and down Hampton Lane at an excessive rate of speed. By Defendant's own admission, he saw Plaintiff's vehicle "seconds" after the dispatch call. (Statement of Material Facts not in Dispute ¶9.) It is undisputed by the parties that Plaintiff's vehicle was not speeding. If a reasonable officer did see Plaintiff's car just seconds after the dispatch call, he would have expected the vehicle to be traveling at a high rate of speed as that was the unlawful conduct reported by dispatch. Since Plaintiff's car was traveling within the speed limit, a reasonable officer would have concluded that this car was not the offending vehicle reported to dispatch and would not have conducted an investigatory stop.

This is not the only inconsistency between Plaintiff's

vehicle and the description of the vehicle given by dispatch.
Plaintiff's vehicle was teal, not dark blue, and was a Honda
Accord, not an Acura.  Plaintiff's vehicle was not on Hampton
Lane but he was driving on an adjacent street, which is not
probative either way.  Plaintiff's vehicle had a rear
Pennsylvania license plate whereas the offending car was reported
to have no tags.  Finally, Plaintiff was traveling with two
passengers (his son and son's girlfriend) and dispatch did not
report that the driver of the offending vehicle had any
additional occupants.

   A rational fact finder could conclude that a reasonable
officer under these circumstances would have known that stopping
Plaintiff's vehicle was unlawful because reasonable suspicion did
not exist.  There were essentially no similarities between the
Mitchell Honda and the Acura the police were seeking.
Accordingly, Defendant Office Perez is not entitled to qualified
immunity.

   Therefore, Defendant's cross motion for summary judgment
will be denied.

**VI. APPOINTMENT OF PRO BONO COUNSEL**

   After reviewing the instant motion papers submitted by the
parties and the litigation history of this case, the court finds
it necessary to appoint pro bono counsel under 28 U.S.C. §
1915(e)(1).  The court is aware that Plaintiff's previous motions

for pro bono counsel were denied by the Magistrate Judge. However, after having the benefit of reviewing dispositive motions filed in this case, the court concludes that the balance of the <u>Tabron</u> factors has shifted and pro bono counsel is necessary.

Where an unrepresented Plaintiff in a civil suit is indigent, and where good cause exists for the appointment of pro bono counsel under 28 U.S.C. § 1915(e)(1), the District Court has the discretion and authority to appoint pro bono counsel even in the absence of a specific motion to do so, pursuant to <u>Tabron v. Grace</u>, 6 F. 3d 147, 156 (3d Cir. 1993).  This case presents circumstances for the Court, sua sponte, to appoint counsel for Plaintiff, for the following reasons.

This matter came before the court on Defendant's motion to dismiss, Plaintiff's motion for summary judgment and Defendant's cross motion for summary judgment.  The Plaintiff failed to respond to both Defendant's motion to dismiss and motion for summary judgment.  Instead, Plaintiff filed his own motion for summary judgment which was not in fact a motion cognizable under Rule 56 but instead a motion for discovery sanctions pursuant to Rule 37.  This demonstrates to the court that the Plaintiff does not understand the Rules of Civil Procedure and does not comprehend the importance of dispositive motions or their effect on his claims.

22

The Court may, pursuant to 28 U.S.C. § 1915(e)(1), request an attorney to represent an indigent plaintiff in a civil action. "The court may request an attorney to represent any person unable to afford counsel." Id.; see also L. Civ. R., App. H.  This Court determined that Plaintiff was indigent when it granted his request for in forma pauperis status on July 25, 2007 [Docket Item 7].  At that time, the Court also screened the Complaint and found that sua sponte dismissal was not warranted under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) because, as to the Fourth Amendment claim that survived, it did not appear that the case was frivolous, malicious, sought damages from an immune party or failed to state a claim.  [Docket Item 5.]  The court has now concluded that Plaintiff's complaint is supported by sufficient facts to withstand summary judgment and proceed to trial. Therefore, it is conceivable that the Plaintiff has a meritorious claim against Defendant Perez.

Plaintiff initially applied for pro bono counsel on May 1, 2012 [Docket Item 38] after filing his first motion for summary judgment [Docket Item 37].  The Defendant did not oppose the application.  However, that request was denied on June 4, 2012 [Docket Item 41].[5]

---

[5] In denying Plaintiff's motion for pro bono counsel in this case, the Magistrate Judge cited the Tabron factors courts in this Circuit typically use to determine whether to grant such motions.  See Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993).  That Order concluded Plaintiff was adequately able to present his

Plaintiff then filed a second motion to appoint pro bono counsel [Docket Item 43] which was summarily denied by the Magistrate for failure to provide any new information relevant to the Tabron factor analysis [Docket Item 47].  However, Magistrate Judge Schneider's denial was without prejudice if appointment of counsel became warranted "by relevant developments."  [Docket Item 47.]

The court concludes that recent developments have shifted the balance of the Tabron factors in favor of appointment of pro bono counsel.  First, after reviewing the above dispositive motion practice, it is clear to the court that the Plaintiff does not understand the Federal Rules of Civil Procedure and is unable to adequately represent himself.  A plaintiff's ability to present his case is recognized as "perhaps the most significant of Tabron's post-threshold factors . . . ."  Montgomery v. Pinchak, 294 F.3d 492, 501 (3d Cir. 2002).  To determine whether a plaintiff is able to present his own case, the Court must consider the plaintiff's literacy, education, prior work experience and prior litigation experience.  Tabron, 6 F.3d at 156.  In this case, the Plaintiff failed to respond to both of Defendant's dispositive motions.  This clearly demonstrates that

claim, the legal issues involved were not complex, the Plaintiff did not cite to difficulties obtaining discovery, and no expert testimony was required.  Therefore, Magistrate Judge Schneider concluded that appointment of pro bono counsel was not necessary. [Docket Item 41.]

24

Plaintiff did not appreciate the nature of these dispositive motions and their ability to prejudice his rights and the viability of his claim.  Instead, Plaintiff filed his own motion for summary judgment that had no basis in Rule 56 but rather sought discovery sanctions pursuant to Rule 37.  This is further evidence that the Plaintiff is unable to understand the federal rules of civil procedure, conduct discovery and engage in dispositive motion practice.  Without these skills, the Plaintiff is unable to present his case.

In addition, both motions for summary judgment reveal that the Plaintiff has had difficulty obtaining discovery from the Defendant.  Plaintiff's motion for summary judgment disclosed issues with obtaining answers to interrogatories and document production requests.  The Defendant was delinquent in responding to Plaintiff's discovery requests and did not abide by the deadline set in the scheduling order.  It is unclear whether the Defendant ever responded to Plaintiff's document requests.  Further, Defendant's motion for summary judgment included the internal investigation report as an exhibit.  This investigation report references a video of the traffic stop taken from Officer Perez's in-car camera.  There is no evidence in the record that Plaintiff requested this crucial piece of evidence or if the Defendant disclosed this video to the Plaintiff.  This video is central to Plaintiff's claims and this key piece of evidence is

currently not in the record.

Finally, after examining the central issue in this case, namely whether Officer Perez had reasonable suspicion to stop Plaintiff's vehicle, it is apparent that a key component of the analysis will be Defendant Perez's credibility.  "[W]hen witness credibility is a key issue, it is more likely that the truth will be exposed where both sides are represented by those trained in the presentation of evidence and in cross examination."  <u>Tabron</u>, 6 F.3d at 156.  Here, Defendant Perez's testimony concerning his observations before the stop and his perception of the dispatch call will be crucial in determining whether he had the requisite suspicion to pull over Plaintiff's vehicle.  Plaintiff Mitchell's credibility would also be at issue, for that matter.  The court is also mindful that the Complaint alleges that Plaintiff's race could have factored into Officer Perez's decision to stop the Plaintiff and this sensitive issue will need to be explored on cross examination by competent counsel.

Therefore, the court concludes that the balance of the <u>Tabron</u> factors have shifted and it is apparent the Plaintiff is indigent, has a possibly meritorious claim and is unable to present his case.  Accordingly, the court finds it appropriate to appoint pro bono counsel at this time.

## VII.  CONCLUSION

For the reasons discussed herein, the court will deny

26

Defendant Jeffrey Perez's motion to dismiss [Docket Item 34], Plaintiff Robert Mitchell's motion for summary judgment [Docket Item 37] and Defendant Jeffrey Perez's cross motion for summary judgment [Docket Item 40].

In addition, the court will sua sponte appoint pro bono counsel for the Plaintiff pursuant to 28 U.S.C. § 1915(e) because it is apparent he is indigent, has a possibly meritorious claim and is entitled to counsel under the Tabron factors.

The accompanying Order will be entered.


**November 28, 2012**　　　　　　　　**s/ Jerome B. Simandle**
Date　　　　　　　　　　　　　　　JEROME B. SIMANDLE
　　　　　　　　　　　　　　　　　Chief U.S. District Judge