```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ROBERT MITCHELL, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 11-1664 (JBS/JS) |
| v. | |
| TOWNSHIP OF WILLINGBORO MUNICIPALITY GOVERNMENT, et al., | **MEMORANDUM OPINION** |
| Defendants. | |

**SIMANDLE**, Chief District Judge:

    This matter is before the Court upon the motion of Defendant Jeffrey Perez to alter judgment. [Docket Item 56.] Specifically, Defendant Perez asks the Court to reconsider its denial of his motion for summary judgment [Docket Items 54 & 55] and instead enter an order granting summary judgment and dismissing Plaintiff Robert Mitchell's complaint. The Court finds as follows:

    1. The instant action arises out of a traffic stop on July 3, 2010 when Defendant Officer Jeffrey Perez ("Defendant") stopped Plaintiff Robert Mitchell ("Plaintiff") after receiving a 9-1-1 dispatch with a description of a suspicious vehicle. According to the 9-1-1 dispatch transcript, on July 3, 2010 at approximately 7:32 PM, a resident on Hampton Lane in Willingboro made a 9-1-1 call and reported that a dark blue Acura with no license plates had been speeding up and down Hampton Lane. Officer Perez then received a call from dispatch which relayed

the information from the 9-1-1 call.  Specifically, dispatch told the Defendant that "a dark blue Acura with no plates" was driving up and down Hampton Lane at a high rate of speed.  Within seconds, Defendant Perez observed a "teal Honda Accord" with no front license plate, which passed him on Harrington Lane.  Defendant Perez reported to dispatch that there were "three or four occupants" in the car and that the vehicle had a Pennsylvania license plate.  Defendant Perez noted the vehicle "looks like a blue Honda Accord."  Defendant Perez then initiated an investigatory stop of the Plaintiff's vehicle.  This stop resulted in Plaintiff's arrest because Plaintiff had two outstanding warrants and had a suspended Pennsylvania driver's license.

    2.  Plaintiff filed the instant action alleging his Fourth Amendment rights were violated.  Plaintiff is an African American and alleges the 9-1-1 dispatch did not create the requisite reasonable suspicion to stop his car because his vehicle did not match the given description.

    3.  The Court dismissed several defendants after its <u>sua sponte</u> screening of the complaint pursuant to 28 U.S.C. § 1915(e).  However, the Court found the Plaintiff had sufficiently stated a viable Fourth Amendment claim against Defendant Perez. [Docket Item 5.]  Defendant Perez answered the complaint and subsequently moved to dismiss the complaint on the basis of

qualified immunity.  [Docket Item 34.]  The Plaintiff then moved for summary judgment.  [Docket Item 37.]  In response, Defendant Perez filed a cross motion for summary judgment which also argued he was entitled to qualified immunity.  [Docket Item 40.]

    4.  The Court issued an opinion and order denying all three motions.  [Docket Item 54 & 55.]  The Court denied Defendant Perez's motion to dismiss because the Plaintiff's complaint sufficiently stated a claim against Defendant Perez for violating his Fourth Amendment rights and qualified immunity was not established on the face of the complaint.  The Court then denied Plaintiff's motion for summary judgment because it was in essence seeking discovery sanctions against Defendant Perez and the Plaintiff did not establish the requisite factors under Fed. R. Civ. P. 37(b) for the imposition of default judgment.  Finally, the Court denied Defendant Perez's motion for summary judgment because the record did not establish that he was entitled to qualified immunity.

    5.  Specifically, in denying summary judgment, the Court concluded that the Plaintiff alleged a deprivation of his Fourth Amendment rights and that it would have been clear to a reasonable officer in Defendant Perez's situation that reasonable suspicion did not exist and consequently, stopping Plaintiff's vehicle would be unlawful.  In reaching this conclusion, the Court reasoned:

> [S]ince the law was clear at the time of the incident that reasonable suspicion was required to conduct an investigatory stop, Defendant Perez can be granted qualified immunity only if his conduct in stopping Plaintiff's car was a violation a reasonable officer could have committed. Viewing the facts in the light most favorable to Plaintiff as the non-moving party, the court concludes a reasonable officer would not have conducted an investigatory stop of the Plaintiff in this situation and a jury could conclude reasonable suspicion did not exist.
> In looking at the factual record in the aggregate, there are several inconsistencies between the suspicious vehicle reported to dispatch and the Plaintiff's car such that a reasonable officer could conclude that reasonable suspicion did not exist to conduct an investigatory stop. First, the record establishes that, in communicating to Officer Perez before any vehicle was pulled over, dispatch described the offending vehicle as a dark blue Acura with no license plates which was driving up and down Hampton Lane at an excessive rate of speed. By Defendant's own admission, he saw Plaintiff's vehicle "seconds" after the dispatch call. (Statement of Material Facts not in Dispute ¶9.) It is undisputed by the parties that Plaintiff's vehicle was not speeding. If a reasonable officer did see Plaintiff's car just seconds after the dispatch call, he would have expected the vehicle to be traveling at a high rate of speed as that was the unlawful conduct reported by dispatch. Since Plaintiff's car was traveling within the speed limit, a reasonable officer would have concluded that this car was not the offending vehicle reported to dispatch and would not have conducted an investigatory stop.
> This is not the only inconsistency between Plaintiff's vehicle and the description of the vehicle given by dispatch. Plaintiff's vehicle was teal, not dark blue, and was a Honda Accord, not an Acura. Plaintiff's vehicle was not on Hampton Lane but he was driving on an adjacent street, which is not probative either way. Plaintiff's vehicle had a rear Pennsylvania license plate whereas the offending car was reported to have no tags. Finally, Plaintiff was traveling with two passengers (his son and son's girlfriend) and dispatch did not report that the driver of the offending vehicle had any additional occupants.

[Docket Item 54 at 19-21.] Therefore, the Court concluded that a

reasonable officer under these circumstances would have known that stopping Plaintiff's vehicle was unlawful because reasonable suspicion did not exist.

6.  Defendant Perez then filed the instant motion to alter judgment pursuant to Fed. R. Civ. P. 59(e).  Defendant Perez argues that the opinion by the Court contained "several oversights with respect to the factual review of the evidence in the record." (Def.s' Br. at 1.)  Defendant Perez contends that the Court's view of the facts in the record created an artificial picture of what happened during the vehicular stop.  In addition, Defendant Perez argues the Court misapplied the applicable legal standard to the facts at issue.  Defendant Perez does not maintain that the Court cited or relied on inapplicable case law.  Rather, Defendant Perez relies on a New Jersey Supreme Court case, State v. Golotta, 178 N.J. 205, 213 (2003), and argues that a police officer in a similar situation to Defendant Perez was entitled to qualified immunity.  Consequently, Defendant Perez now contends that this Court held him "to a higher standard than those who have been excused before him for the same or similar actions." (Def.'s Br. at 8.)  Defendant Perez did not make this argument in his initial moving papers or analyze the factual scenario in Golotta as compared to his own case when he filed his initial motion for summary judgment.  Defendant Perez urges the Court to reverse its denial of summary judgment and grant him

qualified immunity.

    7.   Local Civil Rule 7.1(i) governs the Court's review of Plaintiff's motion for reconsideration.  Rule 7.1(i) requires the moving party to set forth the factual matters or controlling legal authorities it believes the Court overlooked when rendering its initial decision.  L. Civ. R. 7.1(i).  To prevail on a motion for reconsideration, the movant must show:

> (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court . . . [rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

Max's Seafood Café ex rel. Lou-Ann, Inc., v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999); see also Tehan v. Disability Management Services, Inc., 111 F. Supp. 2d 542, 549 (D.N.J. 2000).  To prevail under the third prong, the movant must show that "dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered."  P. Schoenfeld Asset Management LLC v. Cendant Corp., 161 F. Supp. 2d 349, 353 (D.N.J. 2001) (internal quotations and citations omitted).  The standard of review involved in a motion for reconsideration is high and relief is to be granted sparingly. United States v. Jones, 158 F.R.D. 309, 314 (D.N.J.1994); Maldonado v. Lucca, 636 F. Supp. 621, 629 (D.N.J. 1986).

    8.   As an initial matter, Defendant Perez improperly filed this motion as a motion to alter or amend a judgment pursuant to

6

Rule 59(e).  The provisions of Rule 59 are designed to address orders rendering a final judgment, not interlocutory orders denying summary judgment.  Because no final judgment has been entered in this action pursuant to Rule 54(b), the provisions of Rule 59, and its 28-day time limit, are inapplicable here.  <u>Juzwin v. Amtorg Trading Corp.</u>, 718 F. Supp. 1233, 1235 (D.N.J. 1989).  The proper procedural mechanism for reconsideration of this interlocutory order is Local Civil Rule 7.1(i).  Motions under L. Civ. R. 7.1(i) must be served and filed within 14 days after the entry of the order.  In this case, the Defendant filed his motion for reconsideration 28 days after the court entered its order denying summary judgment.  Consequently, Defendant Perez's motion for reconsideration is untimely as it was filed outside the fourteen-day period prescribed by L. Civ. R. 7.1(i) and can be denied on this ground alone.  <u>United States v. Balter</u>, No. 93-536-01, 2010 U.S. Dist. LEXIS 75334 (July 26, 2010), aff'd 410 Fed. App. 428 (3d Cir. 2010)(denying motion for reconsideration which was filed 30 days after order was entered and 17 days after order was received by the <u>pro se</u> party moving for reconsideration).  Therefore, the court will deny Defendant's motion as untimely.

    9.  Notwithstanding the timeliness issue, the Defendant's motion for reconsideration lacks merit. The Defendant does not point to any intervening change in the law or new evidence that

was not available when the court rendered its decision.  Further, the Defendant does not argue that the court overlooked important facts or controlling decisions.

    10.  Rather, Defendant Perez argues the court improperly considered Plaintiff's allegation in his complaint that dispatch identified a four-door vehicle and Plaintiff's vehicle was two-doors when in actuality the record showed the 9-1-1 caller did not identify the number of doors on the vehicle.  This argument is without merit as the court considered this allegation only in deciding Defendant's motion to dismiss [Docket Item 34].  On a motion to dismiss, the court must take all allegations in the pleadings as true.  The court did not consider this allegation in deciding Defendant Perez's motion for summary judgment and therefore this is not a proper basis for reconsideration.

    11.  Defendant Perez next argues that the following facts, while true, do not support the court's denial of qualified immunity: (1) the offending vehicle described by dispatch had no tags whereas Plaintiff's vehicle had a rear Pennsylvania license plate; (2) Plaintiff's vehicle was not observed speeding by Defendant Perez whereas the offending vehicle was reported speeding down an adjacent street; (3) the offending vehicle was described as a dark blue Acura and the Plaintiff's vehicle was a teal Honda Accord; (4) Plaintiff's vehicle had 2 passengers in it while dispatch did not indicate that the offending vehicle had

any passengers. The Defendant does not argue that these facts are not true or unsupported by the record. Instead, Defendant Perez disagrees with the court's analysis of these facts and the court's conclusion that "[t]here were essentially no similarities between the Mitchell Honda and the Acura the police were seeking." [Docket Item 54 at 21.] The Defendant argues that the offending vehicle described by dispatch was not so dissimilar to Plaintiff's vehicle and that a reasonable officer would have conducted an investigatory stop.

12. Ultimately, the Defendants disagree with the court's interpretation of the evidence. This is insufficient to support a motion for reconsideration. "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." See G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990).

12. To the extent the Defendant makes new arguments for qualified immunity based on State v. Golotta, this is improper for a motion for reconsideration. This case was decided by the New Jersey Supreme Court in 2003 and was readily available to the Defendant when he filed his brief for summary judgment. The Defendant offers no explanation for his failure to make these arguments in his initial moving papers.

13.  In addition, <u>Golotta</u> is distinguishable from the facts of this case.  The officer in <u>Golotta</u> stopped a vehicle pursuant to a 9-1-1 call and the New Jersey Supreme Court held there was sufficient corroboration between the suspicious vehicle pulled over by the officer and the vehicle described by the 9-1-1 caller to justify the stop.  In particular, the 9-1-1 caller identified a blue pick up truck driving erratically on Route 206 with a license plate number VM-407B.  As the police officer approached Route 206, the officer observed a blue-pick up truck with the license plate number VM-407V.  The Supreme Court found there was reasonable suspicion to conduct an investigatory stop even though the officer did not observe the vehicle driving erratically because the vehicle matched the 9-1-1 caller's description of the color of the vehicle, type of vehicle, license plate number (with the minor exception of the last letter) and approximate location.  <u>Golotta</u>, 178 N.J. at 209-212; 223-224.  In the instant matter, Officer Perez received a dispatch call identifying a dark blue Acura with no license plates speeding up and down Hampton Lane.  Defendant Perez then pulled over a vehicle which was a teal Honda Accord with a rear Pennsylvania license plate on an adjacent street that was not speeding.  Unlike <u>Golotta</u>, where there were several strong similarities between the description of the vehicle and its license plate number and the vehicle ultimately stopped by the police, here Defendant Perez pulled over a vehicle

which did not match any of the descriptive features identified by the 9-1-1 caller.  The basic similarity was that the Mitchell vehicle was an automobile being driven on a nearby street.  Therefore, Defendant's reliance on Golotta is without merit.

     14.  Accordingly, the Defendant's motion for reconsideration will be denied.  Ultimately, based on facts to be addressed at trial, a jury will determine whether the police officer had a reasonable, though mistaken, basis for stopping the Mitchell vehicle.  This Court makes no determination.  The accompanying Order will be entered.

**March 22, 2013**                   **s/ Jerome B. Simandle**
Date                                JEROME B. SIMANDLE
                                     Chief U.S. District Judge